**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JAMES BROWN,

                         Plaintiff,

          v.                                                                         No. 05-CV-1466
                                              (NAM/DRH)

MICHELLE BASCOMB,[1] Dentist Assistant;
SALLY REAMS, IGP Supervisor; and DR.
EDWARD MARRA, Dentist,

                         Defendants.
_____

**APPEARANCES:**                                            **OF COUNSEL:**

JAMES BROWN
Plaintiff Pro Se
82-C-0099
Attica Correctional Facility
Post Office Box 149
Attica, New York 14011

HON. ANDREW M. CUOMO                          STEPHEN M. KERWIN, ESQ.
Attorney General for the                               Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[2]

    Plaintiff pro se James Brown ("Brown"), an inmate in the custody of the New York State

Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. §

_____

          [1]The proper spelling of this defendant's first name is "Barcomb."  See Barcomb
Decl. (Docket No. 35-4).  The correct spelling will be used herein.

          [2]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

1983 alleging that defendants, three DOCS employees, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments.  Am. Compl. (Docket No. 9). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 35.  Brown opposes the motion.  Docket No. 36.  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts are related herein in the light most favorable to Brown as the nonmoving party. See subsection II(A) infra.

The constitutional violations which Brown alleges occurred during his incarceration at Great Meadow Correctional Facility ("Great Meadow").[3]  Brown contends that from August 2002 until October 2003, he repeatedly requested to see the dentist at Great Meadow for an abscessed tooth.[4]  Am. Compl. ¶ 6.  Brown was finally scheduled for a dental appointment on or about September 25, 2003.  Id.

---

[3] Brown was incarcerated at Great Meadow for two separate periods from May 4, 2000 to May 29, 2001 and from October 16, 2001 to November 21, 2003.  Brown Mem. of Law (Docket No. 36-2) at 3.  Defendants argue that matters occurring during the first period are irrelevant as beyond the statute of limitations.  Defs. Mem. of Law (Docket No. 35-19) at 10-11.  Brown concedes this point, stating that "[i]n the instant complaint [Brown] is and can only complain about events after November 8, 2002."  Brown Mem. of Law at 3. Accordingly, only matters related to the second period will be considered herein. See also note 11 infra.

[4] Brown has submitted (1) what appears to be the copy of a December 2002 grievance related to his lack of medical care; (2) copies of letters written to administrators, not named as defendants herein, dated September, October, and November 2003 seeking dental care; and (3) a February 2003 grievance which was filed at Great Meadow asking for dental services.  Docket No. 36-4 at 8-19.  Additionally, Brown provided copies of six requests for dental treatment to which there were no responses.  Brown Dep. (Docket No. 35-26) at 45; Docket No. 36-4 at 1-6.

When Brown attended his appointment on September 25, defendant Barcomb, the

dental hygienist, "stated that she did not know what had happen[ed] to all of the Dentist

request forms or slips [Brown] sent to [the] Dentist['s] Office, and she showed [Brown] one

request slip and said she did not know why [Brown] was [not] called . . . before now."[5]  Id.;

see also Brown Dep. (Docket No. 35-26) at 27-29.  Defendant Marra, a dentist, asserts that

Brown was placed on the list for dental treatment and had his teeth cleaned by Barcomb in

preparation for the fitting of a partial dental plate on June 17, 2003, was seen by Mara on

September 24, 2003, was scheduled to be seen again on August 26, September 24,

November 6, and November 18 but could not be seen due to insufficient guard staffing, and

was not scheduled for any additional appointments because Brown was transferred out of

Great Meadow on November 21, 2003.  Brown Aff. ¶ 7; Marra Aff. (Docket No. 35-5) ¶¶ 10-

13.[6]

Brown claims that he told defendants Barcomb and Marra that he had an abscessed

tooth that was causing him pain,  leaving his face swollen, draining blood and pus, and

rendering him unable to eat.  Brown Aff. (Docket No. 36-3) ¶ 4; Brown Dep. at 31, 34.  In

---

[5] Brown does not dispute that he only viewed one dental treatment request form in his medical file.  Brown Dep. at 28, 43-45, 67.  However, Brown asserts that he made and provided copies of dental slips to which responses were never received.  Brown Dep. at 45; Docket 36-4 at 1-6.

[6] It appears that "at least one page of [Brown's dental] records is missing."  Marra Decl. (Docket No. 35-5) ¶ 7; Barcomb Decl. ¶ 7. Defendants are unsure how this occurred, but hypothesize that because an inmate's dental record moves with him when he is transferred and no copy of the record is maintained at any transferring facilities, some of the paperwork was lost.  Marra Decl. ¶ 9, 14.  However, other documentation exists in Brown's dental record corroborating various instances which defendants allege were contained in the missing page.  Id. at ¶¶ 7, 10-11, 14-15; see also Docket No. 35-6 at 8; Docket No. 35-7.

response, Marra "looked at the tooth and he could clearly see that the tooth was . . .

infected and he told [Brown] that [Brown] was not there for the tooth . . . [as he] was there

for the fitting of the partial dental plate."  Brown Aff. ¶ 5; see also Brown Dep. at 31.  Marra

instructed Brown to continue submitting dental slips and that Marra would place a referral

for Brown to return for treatment.  Brown Aff. ¶ 5; Brown Dep. at 31.  However, Marra

contends that "no [d]ental professional would disregard a tooth reported to be sore and

infected, particularly one where the patient reported squeezing blood and pus from around

the tooth."  Marra Decl. ¶ 18.  While Marra took an impression for the partial fitting, Brown

never received any further treatment from or had any subsequent interactions with either

Barcomb or Marra.  Brown Aff. ¶¶ 5-6; Brown Dep. at 34-35, 37.

   In the meantime, Brown treated the abscess himself by gargling with salt water and

applying pressure to the gums surrounding his tooth.  Brown Dep. at 21-23; Brown Aff. ¶ 6.

Additionally, Brown took antibiotics and pain relievers for another medical condition which

he believed helped with his tooth. Brown Dep. at 22, 40-41; Brown Aff. ¶ 6.  The tooth was

extracted In February 2005 after Brown was transferred to Elmira Correctional Facility

("Elmira"),.  Brown Dep. at 40-41.

   Defendant Reams, the Great Meadow Inmate Grievance Program (IGP)[7] supervisor,

threw away at least three grievances that Brown had filed in an eleven-month period.  Am.

Compl. ¶ 7; Docket No. 35-11 at 1.  Brown contends that Reams acted in a retaliation for

---

   [7] "The IGP is a three-step process that requires an inmate to: (1) file a grievance
with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent
within four working days of receiving the IGRC's written response, and (3) appeal to the
CORC [Central Office Review Committee] . . . within four working days of receipt of the
superintendent's written response."  Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004)
(internal citations omitted).

4

Brown's grievances which complained of being denied access to the IGP.  Am. Compl. ¶ 7;

Brown Aff. ¶ 8; Brown Dep. at 46-49.  Reams categorically denies these allegations and

proffers multiple reasons why Brown had unimpeded access to the IGP.  According to

Reams, an inmate clerk was sent to speak with Brown in August 2002 to discuss the

appeals which Brown requested to file, but the deadline within which to appeal had expired.

Reams Decl. (Docket No. 35-8) ¶ 10; Docket No. 35-11 at 1.  Brown was instructed that the

appeals could still be considered "if he could demonstrate mitigating circumstances;" but

when Brown resubmitted the appeals in September, he failed to present any extenuating

circumstances that could account for his delay.  Reams Decl. ¶¶ 16-17.  Brown asserts that

he submitted the appeals in a timely manner and that Reams interfered with their

dissemination.  Docket No. 35-12 at 3-6; Docket No. 36-4 at 29-30.  The resubmitted

appeals were denied.  Docket No. 35-12 at 7.  Dissatisfied with Reams' denials, Brown

"wrote to CORC and to the DOCS Commissioner[8] complaining . . . ."  Reams Decl. ¶ 17;

see also Docket No. 35-12 at 8-11.

Additionally, in September 2002, Reams and a sergeant interviewed Brown and

_____

[8] In response to Brown's letter, Thomas Eagen of the IGP responded in a letter
dated September 24, 2002.  Docket No. 35-12 at 12.  The letter stated that (1) Brown had
filed eight grievances to date in 2002, (2) six of the eight had been appealed to CORC,
and (3) the final two were pending.  Id.  Additionally, Eagen stated that Brown's claims of
destruction of his grievances were not credible and that his "attempt[s] to file grievances
directly with central office is without basis and appears to be an attempt to circumvent the
grievance process as required in Directive #4040 . . . ."  Id.  Brown was instructed to
continue filing grievances with the IGP for effectiveness and efficiency.  Id. at 12-13.
Disregarding Eagen's letter, Brown also submitted grievances and appeals directly to
Eagen and the DOCS Commissioner again multiple times in November 2002, receiving
the same advice as contained in the September 24 correspondence.  Id. at 14-20; Reams
Decl. ¶¶ 18-19.  However, Brown claims that he "did not admitt [sic] that he sent his
complaints directly to the Commissioner or Central Office before submitting them to the
IGRC . . . ."  Docket No. 35-18 at 4.

suggested "that he could simply submit new grievances regarding medical, to which he responded that he did not have any current issues in that area." Reams Decl. ¶ 11; see also Docket No. 35-11 at 2. Three months later, Brown appeared in the grievance office where he was "invited . . . to sit down and write any current complaints he had, and he indicated that he had none to submit." Reams Decl. ¶ 12; see also Docket No. 35-11 at 3. In January 2003, an inmate from the Inmate Grievance Resolution Committee ("IGRC") attempted to speak with Brown about his December 2002 grievances in order to obtain copies of these grievances or have Brown re-draft them. Brown "responded that he had no copies, did not want to write new ones, and had sent the grievances directly to the DOCS' Commissioner's office." Reams Decl. ¶ 13; see also Docket No. 35-11 at 4.

   In February 2003, Reams and a sergeant again visited Brown's cell and threatened to file a misbehavior report against him if he continued to complain. Brown Aff. ¶ 8; Brown Dep. at 50; Docket 35-12 at 21-22; Docket No. 36-4 at 36-37. Reams contends that in February 2003, a sergeant visited Brown requesting copies of any of the grievances Brown had allegedly filed in the past three months. Reams Decl. ¶ 14; Docket No. 35-11 at 5; Docket No. 35-18 at 13. Brown stated that he did not have any copies to provide the sergeant and that he intended to "continue to send his grievances directly to DOCS' central office." Reams Decl. ¶ 14; see also Docket No. 35-11 at 2; Docket No. 35-18 at 13-14. The sergeant advised Brown that if he continued to engage in that behavior, which would "mislead[ the] central office [it] could result in a misbehavior report . . . ." Reams Decl. ¶ 14; see also Docket No. 35-11 at 5; Docket No. 35-18 at 13-14. Brown testified during his deposition that he was eventually written a misbehavior report for lying, had a hearing, was

found guilty, and was sentenced to fifteen days in the Special Housing Unit ("SHU").[9]
Brown Dep. at 50-51.

Additionally, Brown filed a grievance against Reams alleging harassment.  Brown Dep.
at 59.  This grievance was denied, Brown had a hearing[10] with the IGRC, the committee
also denied the grievance, the decision was appealed to the Superintendent who also
denied the appeal, and Brown's final appeal to CORC was denied.  Brown Dep. 59-62.  The
CORC decision stated that Brown failed to present adequate evidence of any misconduct
by Reams.  Brown Dep. 62.  This action followed.

## II. Discussion

In his amended complaint, Brown alleges that defendants violated his (1) First
Amendment rights by retaliating against him for filing grievances, (2) Eighth Amendment
rights for being deliberately indifferent to his serious medical needs, and (3) Fourteenth
Amendment rights for filing a false misbehavior report alleging that Brown  lied to the central
office.  Defendants move for summary judgment claiming that (1) Barcomb and Marra were
not deliberately indifferent to Brown's dental condition, (2) Brown had no constitutional right
of access to the IGP, and (3) there is no viable retaliation claim against Reams.

---

[9]SHUs exist in all maximum and certain medium security facilities.  The units
"consist of single-occupancy cells grouped so as to provide separation from the general
population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007).  Inmates are
confined in a SHU as discipline, pending resolution of misconduct charges, for
administrative or security reasons, or in other circumstances as required.  Id. at - 301.

[10]DOCS regulations provide for three tiers of disciplinary hearings depending on the
seriousness of the misconduct charged.  A Tier III hearing, or superintendent's hearing, is
required whenever disciplinary penalties exceeding thirty days may be imposed.  N.Y.
Comp. Codes R. & Regs. tit. 7, §§ 253.7(iii), 270.3(a) (2007).

7

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any

material fact if supported by affidavits or other suitable evidence and the moving party is

entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the

case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the

non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue

for trial. The non-moving party must do more than merely show that there is some doubt or

speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could

find in favor of the non-moving party for a court to grant a motion for summary judgment.

Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v.

Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must

afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, __ F.3d __, 2008

WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("On occasions too numerous to count, we have

reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to

construe his pleadings liberally.'" (citations omitted))..  However, the mere existence of

8

some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine issue

of material fact.  Anderson, 477 U.S. at 247-48.


### B. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual

punishment."  U.S. CONST. amend. VIII.  This includes the provision of medical care and

punishments involving "the unnecessary and wanton infliction of pain."  Hathaway v.

Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted).  A prisoner advancing an Eighth

Amendment claim for denial of medical care must allege and prove deliberate indifference

to a serious medical need.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d

at 66.  More than negligence is required "but less than conduct undertaken for the very

purpose of causing harm."  Hathaway, 37 F.3d at 66.  The test for a § 1983 claim is twofold.

First, the prisoner must show that there was a sufficiently serious medical need.  Chance v.

Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the

prison official demonstrated deliberate indifference by having knowledge of the risk and

failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a

substantial risk to inmate health or safety may be found free from liability if they responded

reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan,

511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to

healthcare', a prisoner must first make [a] threshold showing of serious illness or injury" to

state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting

Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a

serious medical condition is determined by factors such as "(1) whether a reasonable doctor

or patient would perceive the medical need in question as 'important and worthy of

comment or treatment,' (2) whether the medical condition significantly affects daily

activities, and (3) the existence of chronic and substantial pain."   Brock v. Wright, 315 F.3d

158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702).  The severity of the denial of

care should also be judged within the context of the surrounding facts and circumstances of

the case.  Smith, 316 F.3d at 185.

     Deliberate indifference requires the prisoner "to prove that the prison official knew of and

disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison

officials must be "intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104,

(1976).  "Mere disagreement over proper treatment does not create a constitutional claim,"

as long as the treatment was adequate. Id. at 703.  Thus, "disagreements over medications,

diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for

specialists . . .  are not adequate grounds for a § 1983 claim."  Magee v. Childs, No. 04-CV-

1089 (GLS/RFT), 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006).  Furthermore,

allegations of negligence or malpractice do not constitute deliberate indifference unless the

malpractice involved culpable recklessness.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d

Cir. 1996).

     In this case, it appears that Brown has presented sufficient evidence, if credited, to

conclude that his dental ailments were sufficiently serious.  While "[d]ental conditions, like

other medical conditions, may be of varying severity[, t]he standard for Eighth Amendment violations contemplates a condition of urgency that may result in degeneration or extreme pain." Chance, 143 F.3d at 702 (internal quotations and citations omitted). Brown's assertions of excruciating pain, the inability to eat, continually requesting sick calls, and the eventual extraction of the tooth rises to the necessary level of seriousness. See id. (holding that great pain for at least six months, the inability to chew properly, and the possible extraction of three teeth constituted a serious medical need).

Additionally, Brown has offered evidence which, if credited, would establish that both Barcomb and Marra[11] were deliberately indifferent to his abscessed tooth. Barcomb states, and Brown agrees, that there was only one request for dental treatment in Brown's medical record, but there were also multiple copies of additional requests which Brown produced with his motion papers. Brown Dep. at 28, 43-45, 67; Docket No. 36-4 at 1-6. Construing the facts in the light most favorable to Brown, the absence of these requests from his record creates an issue of fact whether he ever made those requests but does not conclusively establish that Brown never made the requests to the dental department. Ignoring such requests may show a denial of treatment since Brown properly requested dental care and was ignored. Additionally, the fact that the Great Meadow dental department scheduled

---

[11]Marra was not named as a defendant in Brown's original complaint. Docket No. 1. Marra was added as a defendant in the amended complaint filed March 17, 2006. Am. Compl. Without legal citation of any kind, defendants contend that only those allegations against Marra which occurred within three years of the filing of the amended complaint, or March 17, 2003, may be considered here as all events prior to that date are time-barred. Defs. Mem. of Law at 11. The original complaint was dated November 9, 2005. Compl. at § 9. Under Fed. R. Civ. P. 15(c)(1)(B), the allegations in an amended pleading relate back to the date of the original pleading in circumstances such as those presented here. Thus, defendants contention is rejected and, as set forth in note3 supra, all matters alleged to have occurred on or after November 8, 2002 will be considered.

and cancelled four appointments over a four-month period, regardless of the reasons, also may constitute a denial of treatment.  The shortage of guard staffing, if credited as the reason for cancellations, cannot be attributed to Brown.  If Brown's evidence is credited, a question of fact is raised whether Barcomb and Marra were aware of Brown's complaints and did nothing to provide care for four months.  Further, Brown contends that Marra told Brown that Marra would arrange for a follow-up appointment himself in addition to Brown continuing to submit requests for treatment.

Last, Brown claims that not only did he repeatedly explain to Marra during an examination that his main problem was the abscessed tooth, not the partial dental plate, but that Marra then viewed the infection and ignored it.  Brown Aff. ¶ 5; Brown Dep. at 31. Viewing the facts in the light most favorable to Brown, these actions could establish an intentional and deliberate denial of dental treatment for a serious medical need.

Accordingly, defendants' motion for summary judgment is denied as to Barcomb and Marra on this ground.

### B. Retaliation

Brown contends that Reams destroyed Brown's grievances in retaliation for Brown's complaints to Reams' superiors at the cental office about the IGP and that Reams instructed a sergeant to file a misbehavior report against Brown charging that Brown had lied to the central office.

To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff.  Graham v. Henderson,

89 F.3d 75, 79 (2d Cir. 1996).  "Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone."  Jackson v. Onondaga County, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008) (citing Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).  Additionally, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id.  Conclusory allegations alone are insufficient.  Id. (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

In this case, Brown has not alleged facts sufficient to support a retaliation claim.  There is no question that Brown's conduct in filing grievances and appeals was conduct protected by the First Amendment.[12]  However, Brown has only stated in conclusory terms that Reams was destroying his grievances and that the sergeant was instructed to file a false misbehavior report.  No evidence of either based on any personal knowledge is offered and Brown relies solely on his suppositions to establish this element.  Such unsupported assertions are insufficient to defeat a motion for summary judgment.  See Jorgensen v. Epic/Sony Records, 351 F.3d 46, 56 n.8 (2d Cir. 2003) ("[S]upposition . . . is too tentative to qualify as evidence . . . ."); Fed. R. Civ.. P. 56(e) ("Supporting affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence , and

---

[12] Defendants argue that Brown had no constitutional right to the IGP.  Without directly addressing that statement, it is noted that "the filing of prison grievances is a constitutionally protected activity."  Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003).  Additionally, the intentional destruction of grievances is sufficient to allege a claim of retaliation.  Soto v. Lacavino, No. 01-CV-5850 (JSM), 2003 WL 2128172 at *2 (S.D.N.Y. June 04, 2003).  Thus, Brown has asserted a potential retaliation claim cognizable under §1983.

shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Thus, Brown has failed to allege specific facts from which one could conclude that Reams' actions were motivated by Brown's constitutionally protected activities.

Moreover,  the vast correspondence from the DOCS Commissioners and CORC warning Brown to follow the prescribed IGP procedures and to cease sending grievances directly to them, the verbal warning Brown received from the sergeant, and Brown's conviction on the disciplinary charges establishes that defendants possessed good cause to charge, convict, and sentence Brown on the disciplinary charges. C.f Edwards v. Balisok, 520 U.S. 641, 646 (1997) (extending to prison disciplinary proceedings the rule that the results of a prison disciplinary proceedings may not be challenged on due process grounds where a successful challenge would "necessarily imply the invalidity of {a disciplinary] conviction or sentence" and citing Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)); see also subsection (C) infra. Thus, Brown's contentions fail to state an actionable retaliation claim.

Accordingly, defendants' motion for summary judgment should be granted on this ground and judgment should be entered in favor of Reams.


### C. False Misbehavior Report

Brown contends that defendants violated his due process rights by filing, convicting, and sentencing him on a false misbehavior report. A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman, 808 F.2d at 951. "There must be

more, such as retaliation against the prisoner for exercising a constitutional right." Boddie
v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588-90
(2d Cir. 1988)).

First, as discussed supra, Brown has failed to state a claim for retaliation.  Thus, the due
process violation cannot stand.  Second, Brown's contentions run afoul of the "favorable
termination" rule of Heck, 512 U.S. at 487-87, and Edwards, 520 U.S. at 646.  That rule
provides that if a determination favorable to the plaintiff in a § 1983 action "would
necessarily imply the invalidity of his conviction or sentence," a plaintiff must prove that the
conviction or sentence has been reversed on direct appeal or declared invalid in order to
recover damages under § 1983.  This rule applies to challenges to procedures used in
prison disciplinary proceedings.  Edwards, 520 U.S. at 646.  There is no evidence that
Brown's disciplinary determination was ever vacated, only that his sentence was reduced.
Therefore, because his recovery of damages here for a false misbehavior report would
necessarily imply the invalidity of his conviction on that report, his claim cannot stand.

Accordingly, defendants' motion for summary judgment on this ground should also be
granted.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for
summary judgment (Docket No. 35) be:

1. **GRANTED** in all respects as to Brown's First and Fourteenth Amendment claims
and judgment be entered in favor of Reams and Reams be terminated from this action; and

2. **DENIED** in all respects as to Brown's Eighth Amendment claims against Marra and Barcomb.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  August 22, 2008
       Albany, New York

_David R. Homer_
United States Magistrate Judge